Davis, J.,
delivered the opinion of the court:
During July, 1875, certain Australian colonies contracted with the plaintiff herein to transport the mails between their ports and San Francisco at a fixed annual compensation. *16 From October 9,1875, plaintiff also carried tbe outward mail from San Francisco to tbe same Australian ports and to tbe Sandwich and Fiji islands, succeeding in this service a foreign steamship company. It is now alleged that plaintiff has been insufficiently paid for tbe transport of these outward mails, and this allegation presents tbe issue in this case.
It appears froiñ tbe findings that for transporting these mails defendants agreed to pay tbe “sea postages” (authorized by section 4009, E. S.) upon tbe mails conveyed; this was to be a trip-to-trip service, not fixed as to period, and subject at any time to stoppage or discontinuance. Mails were delivered to plaintiff corporation at tbe San Francisco post-office, and were thence conveyed by it to tbe dock. These mails were delivered by defendants sealed, and plaintiff bad no method of knowing their contents by examination, or of discerning which of tbe bags contained letters, which newspapers, and which other mailable matter.
To the Government officers, plaintiff trusted for information as to the amount oí mail matter carried by it; and from time to time payments were made upon official statements of the Post-Office Department in Washington, which plaintiff received in the belief that they were based upon full “ sea x>ostag'es ” for the weight of letters, or newspapors, or other matter carried. These payments were made from time to time until, finally, the company requested more specific information as to the method in which its compensation had been calculated; the response led to an immediate protest as to the jmethod adopted, and in due course the question presented arrives in this court through a reference by the Postmaster-General under section 1063 of the Bevised Statutes.
It is a fact that pdaintiff was to carry what mails it did carry for the “ sea postages; ” we must, therefore, first determine what “ sea postages ” are.
The important statute upon this subject is section 4009 of the Kevised Statutes, which provides:
“For transporting the mail between the United States and any foreign port, or between ports of the United States touching at a foreign port, the Postmaster-General may allow as compensation, if by a United States steamship, any sum not exceeding the sea and United States inland postage; and if by a foreign steamship) or by a sailing vessel, any sum not exceeding the sea postage, on the mail so transported.”
*17 The Postmaster-General by this statute may allow for the transport of transoceanic mails in a United States steamship, any sum he may deem right, provided it do not exceed the “ sea and United States inland postage.” The compensation, therefore, is entirely within the Postmaster-General’s discretion, subject to limitation as to the maximum.
It seems that when the Australian company, plaintiff’s predecessors, were carrying the mails, they were paid certain rates of postage arbitrarily fixed by the Post-Office authorities (not by the Postmaster-General), which rates were prescribed in-orders to the postmaster at San Francisco. These orders were apparently still in force when the plaintiff began its trip-to-trip service; but of their existence plaintiff was ignorant. Defendants say that these orders fixed the amount of “sea postage;” that is, defined the meaning of the term “ sea postage.” Before considering this, contention we note, first, that the orders were not made by the Postmaster-General or, so far as appears, by his direction ; second, that they were unknown to plaintiff until this contention began.
Suppose the orders freed from these objections, still we come back to the question, what is “sea postage” ? The Postmaster-General had a perfect right to fix as compensation to the Australian line, a foreign company, any sum he chose “not exceeding the sea postage;” the fact that he allowed an arbitrary sum did not make that sum “sea postage;” the allowance simply fixed the rate at which the company was to be paid, and that rate was subject to one limitation, it must not exceed “ sea postage.”
As to these two orders (in conclusion) they were not made by the Postmaster-General; they were unknown to plaintiff; they do not assume to define “ sea postage,” but simply fix the compensation which the Australian line was to receive, which it must be assumed in the absence of proof to the contrary, did not exceed “sea postage,” but did not necessarily equal it.
What “ sea ” postage is seems clearly enough indicated by the statute (Sec. 4009, It. S.) when it draws the distinction between “sea” postage and “United States inland postage.” “Sea postage” is a varying factor; inland postage is fixed and always definitely ascertainable. The sum of “ sea” and “ inland” postage is the total postage; “inland” postage subtracted from the total leaves the “ sea ” postage.
*18 This hypothesis omits any “ inland ” postage charge made by the receiving Government or any intermediate possible transit charges which, it might be urged, should (with the United States “inland” postage) be deducted from the total cost in order to arrive at the net “ sea” postage; this we think a sound contention, and we define “ sea ” postage to be the difference between the total postage and the United States “ inland ” postage plus the inland postage of the foreign receiving country (when charged), and plus all intermediate transit charges (when made).
(See following treaties: Great Britain, 16 Stat. L., pp. 783 and 851, 853; Prussia, ibid., p. 963; Belgium, ibid., pp. 900 and 924; Mexico, ibid., p. 1102 and 1206; Venezuela, ibid., p. 1105; Postal Unions, Paris, Lisbon, and Berne, 25 Stat. L., p. 1339, 1874.)
The Postmaster-General had the right to fix plaintiff’s compensation; he fixed it at “sea” postage, and as we now find the true meaning of this term, a rule is presented for determining plaintiff’s compensation.
As plaintiff was ignorant of the fact that (during several years) it was receiving less than “ sea ” postage; as the Department knew that it was paying an arbitrary rate which it described to plaintiff as “sea” postage; as the amount due plaintiff under any theory of the law could alone be known to defendants, plaintiff not having access to the sealed mail bags and being ignorant of the previous orders, we can not give importance to defendants’ argument, that, as plaintiff accepted without protest from time to time the lower compensation fixed in the orders herein-above cited, it is presumed to have known the nature and character of the compensation and is now estopped from obtaining anything in addition thereto. Nor do we assume to invade "the Postmaster-General’s right of discretion; that right he exercised when he awarded plaintiff “sea” postage for the service in question; our only duty now is to see that the Postmaster-General’s..order is respected and that the plaintiff shall receive the postage awarded by that principal executive officer.
The difficulty with the contention made on behalf of defendants is, that under section 4009 the Postmaster-General can not define “sea postage;” that term is understood by the statute to have a fixed meaning; the power of the Postmaster- *19 General is absolute as to tbe amount of compensation be may allow tbe American steamship, subject to a maximum limitation, made up of two factors, one fixed, tbe other ascertainable; in this case tbe agreement was for “ sea” postage, and we now ascertain what “sea” postage is; be might have allowed a less sum or be might have allowed United States “ inland” postage also; be did not see fit to do this.
We do not attach force to tbe argument that under this construction of tbe contract tbe bargain was not advantageous to tbe Government, principally because of tbe distance between tbe great eastern cities and San Francisco. Tbe Postmaster-General bad tbe whole matter absolutely under bis control; during tbe period now under consideration United States steamships were by law forced to take tbe United States mails whether they wished to do so or not (sec. 3976 and sec. 4203 É. S., repealed June 26,1884, cb. 121, Yol. 23, Stat. L.); and moreover to take them at such rate as tbe Postmaster-General chose to allow (subject to a maximum limitation only); further tbe agreement with this plaintiff company was only for a trip-to-trip service terminable at any time; we can not and should not assume (nor have we reason to do so) that tbe Postmaster-General in allowing this plaintiff “seapostage” was negligent of tbe public interest. He bad despotic power — we do, not doubt be used it fairly and wisely.
As to tbe contention that plaintiff was bound to know tbe rate of compensation allowed to its predecessor, we have already discussed tbe orders fixing this rate, but if binding under other circumstances they did not bind this plaintiff, for they did not assume to allow “sea postage,” but an arbitrary rate (quite within tbe Postmaster-General’s power to fix), while plaintiff was allowed a different rate, to wit, “sea” postage.
Finally, we must decide upon tbe date when tbe statute of limitations began to run against this claim. For tbe plaintiff it is urged that it did not commence to nan, at tbe earliest, until August 7, 1885, when jfiaintiff first learned tbe manner in which payment has been computed by defendant’s officers.
It is urged that plaintiff trusted these officers, was necessarily ignorant of tbe kind of mails carried, and bad a right to assume that tbe allowances were “computed on tbe basis of tbe total sea postages on tbe mails conveyed; further, that de *20 fendants so assured plaintiff, and it bad no means of verifying sucb assurances and declarations until the necessary and material facts were communicated to it by defendant.” These facts being “peculiarly within the knowledge of defendants,” counsel argue that defendants are estopped from taking advantage of their own failure to disclose them; that the principle of running accounts “should apply,” and as the service was continuous the statute did not begin to run until the last payment, to wit, November 6,1885.
This case is very similar in principle to that of Green reported in 17 Court of Claims Reports (pp. 174,et. seq.). The service performed by plaintiff was a trip-to-trip service; at the end of each trip, therefore, the postage became due and the statute began to run, for there was then a complete service. This conclusion it is sought to avoid by the plea of a concealment fraudulent in law (o.f course there is no claim of fraud in morals in the case) which suspended the bar of the statute. The substantial facts which support this contention of plaintiff are that it did not know the contents of the mail bags which were sealed, and that defendants represented that they paid “ocean postage.”
True, the plaintiff could not open the bags and learn their contents, but nothing prevented the weighing of the mail upon the dock or on board ship and such a course would have naturally put plaintiff upon inquiry as to the character of the mail bags’ contents; ignorant as it was of the amount of letter and newspaper mail carried, such an inquiry would have immediately shown that the return from the Government was inadequate compensation upon plaintiff’s theory of “ ocean ” postage. Reasonable vigilance in 1875 would have led to the course taken in 1885, when a demand made upon the department for the details of its statements of account resulted in a frank explanation of its theory of compensation. Plaintiff, it is true, could not under the circumstances have made out a correct account; but plaintiff had within its control the méans of discovering that (upon its theory of law) it was being underpaid.
Therefore after the first statement of account it was put upon inquiry and was bound to proceed in the exercise of its rights. No intent to deceive is shown upon the part of defendants’ officers. They acted honestly upon their understanding *21 of tbe law. They believed they were paying “ocean” postage and, in the accounts, stated plaintiff’s credit under that head. Further, this action is not founded upon fraud, but upon contract and an “unintentional error or oversight on the part of the Department” (Angelí on Limitations, sec. 185). We conclude that the statute began to run at the end of each trip, and plaintiff can recover only for tjie period beginning six years prior to the presentation of his claim to the Post-Office Department.
Cause remanded to trial calendar for computation of amount due, in accordance with this opinion, and for such further proceedings as may be necessary to that end.
Nott, J., did not sit in this case and took no part in the decision.